IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

```
_____
LANDON ROBINSON,                    )
                                    )
              Plaintiff,            )
                                    )
     v.                             ) Civ. No. 20-00263-ACK-WRP
                                    )
ANDREW SAUL,                        )
Commissioner of Social Security,    )
                                    )
              Defendant.            )
_____)
```

<u>ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER
OF SOCIAL SECURITY</u>

For the reasons discussed below, the Court REVERSES the decision of the Commissioner and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

<u>BACKGROUND</u>

In 2017, Plaintiff Landon Robinson filed a Title II application for disability insurance benefits ("SSDI") and protectively filed an application for supplemental security income ("SSI"). Admin. R. ("AR") 223-32; <u>see also</u> AR 11. Robinson originally alleged disability beginning August 7, 2016, but he later amended the onset date to a closed period from August 7, 2016, through September 24, 2017. Both applications were denied initially and then upon reconsideration. AR 153-56, 161-65. Robinson requested a hearing before an administrative

law judge ("ALJ"), which was held on May 23, 2019, and at which Robinson appeared and testified with counsel present.  AR 37-66. On June 25, 2019, the ALJ issued his written decision finding that Robinson was unable to work during the closed period, but because substance use was material to his disability, he was not entitled to the payment of benefits.  AR 8-31.  Robinson sought review by the Appeals Council, which declined to review the ALJ's decision.  AR 1-7.  The ALJ's decision thus became the Commissioner's final decision.

Robinson filed a complaint in this Court on June 8, 2020, seeking review of the denial of his application for SSI and SSDI benefits.  ECF No. 1.  He filed his Opening Brief on December 24, 2020, ECF No. 19, and Defendant Andrew Saul, the Commissioner of Social Security (the "Commissioner"), filed his Answering Brief on February 1, 2021, ECF No. 20.  Robinson then filed a Reply on March 1, 2021.  ECF No. 21.  A telephonic hearing was held on March 11, 2021.

**STANDARD**

A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of

Social Security.[1/]

A final decision by the Commissioner denying Social Security disability benefits will not be disturbed by the reviewing court if it is free of legal error and supported by substantial evidence.  See 42 U.S.C. § 405(g); Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Even if a decision is supported by substantial evidence, it "will still be set aside if the ALJ did not apply proper legal standards."  See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014).

In determining the existence of substantial evidence, the administrative record must be considered as a whole, weighing the evidence that both supports and detracts from the Commissioner's factual conclusions.  See id.  "Substantial evidence is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (citation and internal quotation marks omitted).  "If the evidence can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner."  Id. (citation and internal quotation marks omitted).  Rather, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve

_____

[1/] 42 U.S.C. § 1383(c)(3) incorporates the judicial review standards of 42 U.S.C. § 405(g), making them applicable to claims for supplemental security income.

ambiguities in the record." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014).

But reviewing courts must be cognizant of the "long-standing principles of administrative law [that] require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009); see also S.E.C. v. Chenery Corp., 332 U.S. 194, 196 (1947) ("If th[e] grounds [invoked by the agency] are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis").

## **DISCUSSION**

"To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national

economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see also 42 U.S.C. § 1382c(a)(3)(B).  A claimant must satisfy both requirements to qualify as "disabled" under the Social Security Act (the "SAA").  Tackett, 180 F.3d at 1098.

## I.   The SSA's Framework for Determining Disability

The regulations set forth a five-step sequential process for determining whether a claimant is disabled.[2] Dominguez v. Colvin, 808 F.3d 403, 405 (9th Cir. 2014); see also 20 C.F.R. § 416.920(a).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (citations omitted in original); see also 20 C.F.R. § 416.920(a)(4).  The claimant bears the burden of proof as to steps one through four, whereas the burden shifts to the Commissioner for step five.  Tackett, 180 F.3d at 1098; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).

At step one, the ALJ will consider a claimant's work activity, if any.  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in substantial gainful activity, the ALJ will determine that the claimant is not disabled, regardless of the claimant's medical condition, age,

---

[2]   The relevant provisions governing SSI set forth in 20 C.F.R. Part 416 are identical to those for SSDI set forth in 20 C.F.R. Part 404. Accordingly, the Court will only cite to the former regulations.

education, or work experience.  Id. § 416.920(b).  Substantial

gainful activity is work that is defined as both substantial

(work activity involving significant physical or mental

activities) and gainful (work activity done for pay or profit).

Id. § 416.972.  If the ALJ finds that the claimant is not

engaged in substantial gainful activity, the analysis proceeds

to step two.  Tackett, 180 F.3d at 1098.

Under step two, the ALJ considers the medical severity

of the claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii).

Only if the claimant has an impairment or combination of

impairments that "significantly limits [his] physical or mental

ability to do basic work activities" will the analysis proceed

to step three.  Id. § 416.920(c).  If not, the ALJ will find the

claimant is not disabled and the analysis ends there.  Id. §

416.920(a)(4)(ii).

The ALJ also considers the severity of the claimant's

impairments at step three.  20 C.F.R. § 416.920(a)(4)(iii).

Here, the ALJ will determine whether the claimant's impairments

meet or equal the criteria of an impairment described in the

regulations.  Id.; see also id. § 416.925; id., Part 404,

Subpart P, App. 1.  If the impairments meet or equal these

criteria, the claimant is deemed disabled and the analysis ends.

Id. § 416.920(a)(4)(iii).  If not, the analysis proceeds to step

four.  Id. § 416.920(e).

Step four first requires the ALJ to determine the claimant's residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  RFC is defined as the most the claimant can do in a work setting despite his physical or mental limitations.  Id. § 416.945(a)(1).  In assessing a claimant's RFC, the ALJ will consider all of the relevant evidence in the claimant's case record for both severe and non-severe impairments.  Id.  The ALJ then uses this assessment to determine whether the claimant can still perform his past relevant work.  Id. § 416.920(e).  Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  Id. § 416.960(b)(1).  The ALJ will find that the claimant is not disabled if he can still perform his past relevant work, at which point the analysis will end.  Otherwise, the ALJ moves on to step five.

In the fifth and final step, the ALJ will again consider the claimant's RFC—as well as his age, education, and work experience—to determine whether the claimant can perform other work.  20 C.F.R. § 416.920(a)(4)(v).  Here, the Commissioner is responsible for providing "evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do."  Id. § 416.960(c)(2); see also id. § 416.920(g).  If the claimant is

7

unable to perform other work, he is deemed disabled.  Id. §
416.920(g).  If he can make an adjustment to other available
work, he is considered not disabled.  Id.

In cases involving substance abuse, there is an
additional component to the analysis.  The statute provides that
"an individual shall not be considered to be disabled . . . if
alcoholism or drug addiction would . . . be a contributing
factor material to the Commissioner's determination that the
individual is disabled."  42 U.S.C. §§ 423(d)(2)(C),
1382c(a)(3)(J); see also 20 C.F.R. § 404.1535.  Thus, the ALJ
must decide whether the claimant's substance use was a material
contributing factor to the finding of disability.  The key
question in making that determination rests on whether the
claimant would continue to be disabled if he stopped using drugs
or alcohol.  20 C.F.R. §§ 404.1535, 416.935.  The claimant bears
the burden of demonstrating his substance use was not a material
contributing factor.  See id. § 404.1535; Parra v. Astrue, 481
F.3d 742, 745 (9th Cir. 2007).

## II.  The ALJ's Analysis

Here, the ALJ found at step one that Robinson had not
engaged in substantial gainful activity during the closed
period, and at step two that he suffers from the following
severe impairments:  depressive disorder and borderline
personality disorder, both aggravated by polysubstance abuse

8

(methamphetamines, cocaine, marijuana, and alcohol).  AR 14.  At the third step, the ALJ found that Robinson's impairments, including the substance use disorders, met the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d) & 416.920(d)).  AR 14.  Because Robinson's impairments were per se disabling under the regulations, the ALJ found that Robinson was disabled during the relevant period.  20 C.F.R. § 416.920(a)(4)(iii); see also AR 14.

Having made a finding of disability at step three, the ALJ's analysis turned on whether Robinson's substance use was material to the finding of disability.  The ALJ held that it was.  AR 21.  Specifically, the ALJ concluded that if Robinson had stopped his substance use then he would not have had any severe impairments, and any remaining limitations "would not have caused more than a minimal impact on [his] ability to perform basic work activities."  AR 21.  Thus, the ALJ found that because Robinson's substance use was material to his disability, he was not disabled within the meaning of the SSA.  AR 26.

**III. Robinson's Challenge on Appeal**

Robinson makes one main argument on appeal.  He argues that the ALJ erred in finding that his substance use was material to his disability.  See Opening Br. at 11.  Thus,

Robinson says, the matter should be remanded to the ALJ for a proper materiality analysis.  Id.

## IV.  Analysis – Materiality of Substance Abuse

As mentioned, an individual is considered ineligible for disability benefits if substance use would be "a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); see also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).  In making that determination, the ALJ must analyze whether the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol.  20 C.F.R. § 404.1535(b).  In the case of substance use and a co-occurring mental disorder, an ALJ's finding that substance use is material must be supported with fully developed evidence in the record establishing that the claimant's co-occurring mental disorder would improve to the point of nondisability in the absence of substance abuse.  Soc. Sec. Ruling ("SSR") 13–2p, 2013 WL 621536, at *7-8 (Feb. 20, 2013).  The claimant bears the burden of demonstrating that his substance use was not a material contributing factor to the finding of disability.  See 20 C.F.R. § 404.1535; Parra, 481 F.3d at 745.

Robinson has struggled with alcohol and drug addiction at various points in his life and during and after the relevant

period of disability.  He has been in and out of treatment programs and despite brief periods of lessened drug or alcohol use, he had several relapse episodes both during and after the relevant period.  The ALJ found that Robinson's mental impairments were aggravated by "polysubstance abuse (that is, methamphetamines, cocaine, marijuana and alcohol)."  AR 14.  At the hearing before the ALJ in May 2019—after the closed period of disability had ended and while Robinson was gainfully employed—Robinson claimed that he was clean and sober from methamphetamine and drugs, and that he was only using alcohol in moderation.[3/]  Now on appeal, Robinson argues that he has continued to use alcohol and sometimes drugs yet been able to continue working because his mental health has greatly improved as a result of mental-health treatment and prescribed medication.  Robinson thus argues that he has established—from medical records and medical-source opinions—that his substance abuse was not material to his disability.

Robinson asserts two specific points of error in the ALJ's analysis.  He first argues that the ALJ improperly failed to consider the separate effects of Robinson's mental-health treatment when making a finding of materiality.  And second, he

_____

[3/]  As discussed further below, other medical records from this timeframe suggest that Robinson was not actually sober or using alcohol in moderation.  Indeed, some records show that he was drinking as much as "5-6 drinks, 5 nights a week" in the weeks and months following the end of the closed period.  AR 2819.

argues that the ALJ improperly discounted certain testimony of consultative examining psychologist Dr. Harada.  The Court takes each of these arguments in turn.

### A. Whether the ALJ Erred in Failing to Consider the Effects of Robinson's Mental-Health Treatment

Robinson contends that the ALJ's materiality finding was made based on legal error and was not supported by substantial evidence in accordance with SSR 13-2p.[4/]  Opening Br. at 11-12.  SSR 13-2p explains the Commissioner's policy on the analysis of substance abuse (or "DAA") in a case involving co-occurring mental disorders.  See SSR 13-2p, 2013 WL 621536 at *9.  It directs, in relevant part, that the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA."  Id.  Therefore, if "the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA," the claim for benefits will be allowed.  Id.

---

[4/]  SSRs "do not carry the force of law, but they are binding on ALJs nonetheless," and "[t]hey reflect the official interpretation of the SSA and are entitled to some deference as long as they are consistent with the Social Security Act and regulations."  Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012), superseded by regulation on other grounds as stated in George v. Saul, 2021 WL 672880 (9th Cir. 2021); see also 20 C.F.R. § 402.35(b)(1) ("[SSRs] are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted.").

SSR 13-2p also requires the ALJ to consider periods of abstinence from drug and alcohol use that are long enough to allow the "acute effects" of drug and alcohol use to abate.  Id. at *12.  Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what if any medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated.  Id.  "Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended."  Id.  For DAA to be material, there must be evidence in the record "demonstrating that any remaining limitations were not disabling during the period." Id. (footnote omitted).

"This case demonstrates the difficulty in disentangling a claimant's substance abuse from a co-occurring mental disorder, especially where there are limited or no periods of abstinence."  Young v. Comm'r Soc. Sec. Admin., 214 F. Supp. 3d 987, 998-99 (D. Or. 2016).  Recognizing the difficulty in evaluating disability cases with co-occurring substance abuse and mental disorders, the Ninth Circuit distinguishes "between substance abuse contributing to the disability and the disability remaining after the claimant

13

stopped using drugs or alcohol." *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998) (emphasis in original).  In that regard, the Ninth Circuit has cautioned that "[j]ust because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too."  Id. Thus, when there are co-occurring mental disorders in addition to DAA, the ALJ must be able to separate the effects of the two types of impairments to find DAA material.  See SSR 13-2p, 2013 WL 621536 at *9, 12.  Said more colorfully, "the ALJ must take on the difficult task of untangling the warp threads of the claimant's substance abuse from the woof threads of the claimant's other impairments in order to examine the hypothetical cloth that remains."  *Nelson v. Saul*, 413 F. Supp. 3d 886, 912–13 (E.D. Mo. 2019) (quoting *Malone v. Colvin*, 2014 WL 348590, at *3 (W.D. Ark. Jan. 31, 2014)).

Here, the Court finds that the evidence relied upon by the ALJ does not adequately separate the effects of Robinson's substance and alcohol abuse from the effects of his co-occurring depressive disorder, borderline personality disorder, and his symptoms of anxiety.  Likewise, the evidence and the ALJ's conclusions therefrom do not adequately address the effects of the separate treatment for Robinson's substance use versus his mental disorders.  Accordingly, the evidence does not rise to the level of substantial support for the ALJ's decision.

Although the ALJ identified medical records and reports he viewed as supporting his conclusion that Robinson's mental impairments would not be disabling absent his substance abuse, those records do not sufficiently address whether Robinson would remain disabled if he abstained.  See Kroeger v. Colvin, No. 13-CV-05254-SI, 2015 WL 2398398, at *10 (N.D. Cal. May 19, 2015) (citing Sousa, 143 F.3d at 1245).  And the evidence in the record tends to suggest that Robinson actually continued abusing at least alcohol after the closed period ended and while he was employed, which refutes the premise upon which the ALJ largely relies.  The Court sees three main problems with the ALJ's analysis, all of which overlap:

First, the ALJ's materiality decision is largely based on his own interpretation of the record regarding Robinson's functioning.  It is well settled in the Social Security context that an ALJ may not rely on his lay opinions to the detriment of the medical opinions of qualified medical professionals.[5/]  And in cases where the claimant's limitations arise from mental impairments, the need to rely on medical evidence as opposed to the ALJ's lay interpretation is even greater.  See Morales v. Apfel, 225 F.3d 310, 319 (3d Cir. 2000) ("The principle that an ALJ should not substitute his lay opinion for the medical

---

[5/]  Of course, this does not preclude the ALJ from discounting certain medical-opinion evidence as contradicted by other objective evidence in the record.

15

opinion of experts is especially profound in a case involving
. . . mental disability."). Here, the ALJ's conclusions about
the impact of Robinson's substance use is largely based on his
own lay opinion rather than the objective medical evidence.
Looking at the medical evidence, it is not sufficiently clear
the degree to which Robinson's symptoms were impacted by his
substance use versus his mental disorders, especially once he
began treatment.

For example, many of the medical records during the
relevant period describe how Robinson's history of substance
abuse "confounds" his mood and psychotic disorders. See e.g.,
AR 2326, 2337. And while other records suggest that Robinson's
use of drugs or alcohol may exacerbate or worsen his symptoms,
they likewise acknowledge Robinson's "dual diagnosis" and co-
occurring treatment, as well as his longstanding history of
psychiatric disorders and suicidal ideations. See, e.g., AR
2308-09, 2312, 2324-26, 2330, 2371. It is also clear from the
record that Robinson was being treated for both his mental
disorders and substance abuse, yet the ALJ barely addressed or
analyzed the impact of the mental-health treatment, particularly
his structured treatment at Queen's Medical Center and his
supportive living environment at the KURH House towards the end
of the closed period, as well as his ongoing therapy and
prescription medication plan thereafter. The ALJ instead

16

interprets the records showing Robinson's constantly-changing habits with respect to drug and alcohol use, and made his own conclusions therefrom.  In particular, the ALJ operates on the assumption that Robinson's substance use largely ceased after the closed period despite medical records indicating he continued with heavy alcohol use and occasional drug use. Moreover, medical reports in the record—one from Dr. Harada in August 2017 and one from Robinson's therapist Dr. Thomas O'Neil in March 2019—suggest that Robinson has struggled with mental disorders and impairments that have largely existed with or without significant substance use, even to some degree after the closed period ended and while Robinson was employed.  See AR 2467-74 (Harada report), 2763 (O'Neil report).

This conclusion is reinforced by the evidence in the record indicating that Robinson's polysubstance abuse never waned, even after the closed period ended and Robinson began working.  The ALJ rests much of his analysis on the premise that Robinson became sober or at least substantially decreased his substance use when he began working.  But while Robinson may have had periods of abstinence from methamphetamines or other drugs, the Opening Brief provides many examples from the record of evidence of that Robinson continued to abuse alcohol.  See Opening Br. at 18-20; Reply Br. at 9-11.  Although the ALJ recognized Robinson's polysubstance use—meaning his use of

multiple substances including both alcohol and methamphetamine—
he seems to focus on Robinson's sobriety from methamphetamine
without considering the continued alcohol abuse. In sum, the
ALJ erred by making his own lay conclusions contrary to the
medical-opinion evidence and other medical records.

Second, while there is evidence that Robinson made
some progress at various times in lessening his substance use,
and then in late 2017 after the period of disability ended with
regular therapy and consistent medication, the Court cannot
ignore the instability and "waxing and waning" nature of his
mental impairments and symptoms. Indeed, "[c]ycles of
improvement and debilitating symptoms are a common occurrence,
and in such circumstances it is error for an ALJ to pick out a
few isolated instances of improvement over a period of months or
years and to treat them as a basis for concluding a claimant is
capable of working." Garrison v. Colvin, 759 F.3d 995, 1017
(9th Cir. 2014); see also Andler v. Chater, 100 F.3d 1389, 1393
(8th Cir. 1996) ("Although the mere existence of symptom-free
periods may negate a finding of disability when a physical
ailment is alleged, symptom-free intervals do not necessarily
compel such a finding when a mental disorder is the basis of a
claim.").

The ALJ's selective review of the record here for
positive notations, and his own interpretation correlating brief

18

periods of improvement with lessened substance abuse is problematic.  The ALJ fails to consider the possibly waxing and waning nature of Robinson's mental illnesses, which may at times have synced up to periods of sobriety or lessened substance use (which, of course, were also waxing and waning in nature).  But they may just as well have synced up to periods where Robinson was receiving mental-health treatment and medication.  Yet the ALJ barely addresses the implications of Robinson's mental-health treatment plan.[6/]  The Commissioner points to a single reference in the ALJ decision to Robinson responding well when compliant with "prescribed treatment."  Ans. Br. at 18 (citing AR 23).  Reading the decision, it is not clear throughout whether and when the ALJ is referencing Robinson's substance abuse treatment, his mental-health treatment, or some dual-diagnosis treatment (like what he received at Queen's Medical Center).  Without exploring that nuance and the effects of the mental-health treatment on Robinson's impairments, the ALJ cannot properly find substance abuse material:

> Improvement in a co-occurring mental disorder in a highly structured treatment setting, such as a hospital or substance abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental disorder, not (or not entirely) the cessation of substance use.  We may find that DAA is not

---

[6/]  The Commissioner attempts to cite some portions of the record that were not addressed by the ALJ in the materiality analysis.  See Ans. Br. at 18-19.  The Court cannot consider such post hoc justifications as a basis for supporting the ALJ's ultimate conclusion.  See Bray, 554 F.3d at 1225-26.

material depending on the extent to which the
treatment for the co-occurring mental disorder
improves the claimant's signs and symptoms.

SSR 13-2p, 2013 WL 621536 at *12.  This is particularly true
here, where the record suggests that Robinson was in and out of
various treatments—some focused on substance abuse, some on
psychiatric disorders, and some on both.  See AR 2352, 2384,
2395, 2448, 2568, 2715, 2740.

What is more, in deciding that Robinson's disabling
symptoms were solely or primarily from his substance abuse, the
ALJ relies on the faulty premise that Robinson's substance abuse
ended or decreased towards the end of the closed period when he
began working.  Again, this is not supported by the substantial
evidence.  As Robinson explains in his Opening Brief, the
evidence indicates that while his substance of choice may have
changed, his polysubstance use as a whole never stopped.  See
Opening Br. at 18-20.  Indeed, the record shows that while
Robinson at times abstained from methamphetamine or other drug
use, he largely continued to abuse alcohol and sometimes
marijuana.  See e.g., AR 2819.  Additionally, around the end of
the closed period in August 2017, Robinson participated in
structured treatment at Queen's Medical Center and supportive
housing at the KURH House.  But he soon withdrew from his
substance-abuse treatment and left supportive housing.  See AR
2471.  Despite fluctuating substance use and substance-abuse

20

treatment, what remained a constant during this time at least
until the administrative hearing was that Robinson largely stuck
with a mental-health treatment plan involving therapy with Dr.
O'Neill and an ongoing prescription medication regimen.  AR
2732, 2740, 2759-63.

Both the ALJ and the Commissioner assume that
Robinson's substance use lessened during this time.  But in the
few months after the end of the closed period, medical records
reported that Robinson was drinking heavily—as much as "5-6
drinks, 5 nights a week."  AR 2819.  And according to those same
records, Robinson was "not interested in substance reduction"
but was willing to continue with therapy and his medication plan
to treat his mental disorders.  AR 2819.  Over the course of the
next year while he remained steadily employed, Robinson
continued to regularly test positive for high alcohol use and
occasionally for amphetamines.  AR 2831, 2833, 2844-45.  So
while the record reflects that Robinson's substance use remained
after the closed period ended, the difference appears to have
been his commitment to mental-health treatment.  The ALJ's
decision largely ignores the evidence in the record indicating
that Robinson's disabling symptoms lessened to the point that he
could successfully work, despite some degree of his substance
use (particularly heavy alcohol use) continuing.  Instead of
addressing that evidence and the continued mental-health

treatment component, the ALJ made factual conclusions based on his own piecemeal review of the record.

The Commissioner makes much of the fact that Robinson testified at the hearing before the ALJ, "I don't think I'd be able to hold down a job if I was doing meth." Ans. Br. at 16-17 (citing AR 59). In the Commissioner's view, this speculative, lay statement from Robinson is an "admission that his substance abuse (methamphetamine) was material to his disability." Id. Yet this testimony is not cited anywhere by the ALJ as informing his conclusion on materiality. As the Ninth Circuit has warned, the Court must be careful to "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray, 554 F.3d at 1225-26.

The Court certainly recognizes that the ALJ's decision includes a detailed analysis of the "four broad functional areas" under the regulations for evaluating mental disorders. See AR 24-26. And he seems to analyze the proper overarching question—whether Robinson would have been disabled absent his co-occurring mental disorders. See id. But missing from the analysis is an indication that the ALJ considered the specific effects of Robinson's mental-health focused treatment, as

opposed to his substance-use treatment or his abstinence.[7/]  The Court thus finds that—consistent with SSR 13-2p—the ALJ erred by failing to account for the record's lack of evidence addressing the separate effects of treatment for substance abuse and Robinson's co-occurring mental disorders:

> If the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorders, the ALJ must find that DAA is not material.

SSR 13-2p, 2013 WL 621536 at *12; see also Young, 214 F. Supp. 3d at 994-95.  This is especially evident here, where the record shows that Robinson's substance abuse and treatment for co-occurring mental disorders both remained constant after the closed period ended and while he was employed.

Third, and related to the first two points, the ALJ failed to identify meaningful periods of abstinence and the impact on Robinson's mental impairments.  Under SSR 13-2p(9), periods of abstinence may be considered evidence of whether DAA

---

[7/]  The record is questionable at best as to periods of sustained abstinence, either before or after the closed period.  As Robinson points out in his briefing, he suffers from polysubstance abuse, meaning he used multiple substances, including—among others—methamphetamines and alcohol.  His use and substance of choice seems to have fluctuated, but the ALJ seems to view the record as showing a distinct before time (the closed period while Robinson was using regularly) and after time (the period thereafter while Robinson's use of methamphetamines decreased as a whole).  As discussed above, that conclusion is not supported by the substantial evidence—which shows that Robinson continued to abuse alcohol and sometimes used other drugs, even after the closed period ended and while he was employed.  Moreover, as discussed at length in this Order, the ALJ largely failed to grapple with the other critical variable:  Robinson's increased structured mental-health treatment and then ongoing therapy and medication towards the end of and after the closed period.

is material in cases involving co-occurring mental disorders, so long as the "claimant is abstinent long enough to allow the acute effects of drugs or alcohol abuse to abate."  See SSR 13-2p, 2013 WL 621536 at *12; see also Parr, 2016 WL 4064044, at *9.  When an ALJ is considering a period of abstinence with co-occurring mental disorders, the documentation should include information about what impairment-related limitations remained after the acute effects abated, and the length of the abstinence and under what circumstances the abstinence occurred, such as hospitalization or treatment setting.  SSR 13-2p, 2013 WL 621536 at *12; see also Hoban v. Colvin, 2016 WL 4059200, at *6 (D. Or. July 27, 2016).  To find DAA material, there must be evidence demonstrating that any remaining limitations were not disabling during the period.  SSR 13-2p, 2013 WL 621536, at *12.

The ALJ here made much of the fact that Robinson's impairments seem to abate during his periods of lessened drug or alcohol abuse, particularly after the closed period ended.  But even though the longitudinal record suggests that Robinson at times decreased his drug and/or alcohol abuse and his functioning marginally improved, periods of true abstinence appear to be few and far between.  The Court acknowledges the general proposition that evidence of improvement during periods of abstinence or lessened use may support a finding that DAA is material to the disability.  See Tyson v. Colvin, 9 F. Supp. 3d

1104, 1114 (D. Neb. 2014) (citing Vester v. Barnhart, 416 F.3d 886, 890 (8th Cir. 2005)).  This is common sense, after all. But the Court must also keep in mind that "a claimant who is disabled by mental impairments is likely to be even more impaired while abusing alcohol" or other drugs.  Id.  So "[t]he fact that those impairments may subside somewhat when the claimant stops drinking [or using drugs] does not mean that the claimant was not disabled in the first place."  Id. (citing Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000)).

        Neither party here can reasonably dispute that alcohol and drug use was a conflating factor.  But neither can it be disputed that the record shows that Robinson had similar versions of his symptoms whether or not he was using drugs or alcohol.  And even if he may have been more functional when he was using drugs less, he continued his extreme use of alcohol and the medical opinions and records suggest that his mental impairments were there all along.[8]  Cf. Ambrosini v. Astrue, 727 F. Supp. 2d 414, 431 (W.D. Pa. 2010) (rejecting the ALJ's finding of materiality where he based it only on "his own conclusion that when the claimant is not using drugs, the

---

[8]  The Court reiterates that the record shows that Robinson largely continued his polysubstance use—especially alcohol—to some degree after the end of the closed period and while he was working.  This supports a finding that Robinson's polysubstance use was not material to his disability; it was instead his mental-health treatment—not abstinence—that led to meaningful improvements and the lessening of his disabling symptoms.

evidence shows that the claimant appears to improve" (internal quotation marks omitted)).  Even putting all that aside, the Court has already noted evidence in the record showing that Robinson's substance use (particularly drinking alcohol) largely continued after the period of disability ended and while he was employed.  And the ALJ here plainly erred when he did not address the effect of the increased mental-health treatment Robinson began receiving, particularly toward the end of the closed period, and the fact that Robinson was in structured mental-health treatment and then therapy.

It may be true that Robinson's symptoms sometimes became less debilitating during the brief periods when he appears to have lessened his substance abuse—at least with respect to methamphetamines.  But this correlation can be explained by other factors, namely that the periods of lessened substance use during and after the period of disability appear to also associate with possible effects from increased mental-health treatment.  Yet the ALJ failed to meaningfully address that possibility.  The periods of lessened use—often without time for the "acute effects" of abstinence to be assessed—are not a sufficient basis for reliably concluding that Robinson's mental impairments would have improved to the point of nondisability during the relevant months absent his drug and alcohol use.  See Young, 214 F. Supp. 3d at 998–99 (finding that

26

"brief periods of cessation" and marginal improvements near the end of an evaluation period was "not a sufficient basis upon which to reliably conclude that Plaintiff's co-occurring PTSD would have improved to the point of non-disability in 2006 absent her alcohol use").

This is especially true here, where medical-opinion evidence either does not distinguish between Robinson's mental impairments and his DAA symptoms or states outright that Robinson's mental impairments alone were disabling (which the Court addresses further below). For example, Dr. Harada ultimately concluded that "[b]ased upon psychiatric concerns alone, [Robinson] does not have the capacity to adapt and cope with the usual demands of a low stress/entry level position of employment despite current depression symptoms, emotional dysregulation, distress intolerance, impulsivity and recurrent suicidal ideation." AR 2473.

In sum, the ALJ erred by failing to point to evidence distinguishing between Robinson's substance use and mental impairments, and particularly evidence that his disabling limitations would not have existed absent his substance abuse. Likewise, the ALJ failed to consider critical evidence in the record showing that Robinson continued to abuse at least alcohol after the closed period ended and while he was working. In any event, whether or not Robinson actually continued to use drugs,

alcohol, or both after the period of disability and at the time
of his hearing, the ALJ failed to address the separate effects
of the treatment for Robinson's mental disorders.  Given that
the record reflects that mental-health treatment was the primary
factor distinguishing the closed period from the time
thereafter, the ALJ's failure to properly analyze the separate
treatment effects was error.

### B. Whether the ALJ Erred in His Assessment of Dr. Harada's Medical Opinion

Robinson also contends that the ALJ erroneously
evaluated a medical opinion when assessing whether substance
abuse was a contributing factor material to the disability
determination.  Opening Br. at 21-22.  He argues that the ALJ
failed to provide legitimate reasons for rejecting a portion of
consultative examining psychologist Dr. Harada's findings.  Id.

Different standards govern an ALJ's analysis of
medical-opinion evidence.[9/]  See Lester v. Chater, 81 F.3d 821,
830 (9th Cir. 1995); see also 20 C.F.R. § 416.927(c)(2).
Relevant here, the ALJ must provide clear and convincing reasons
for rejecting the uncontradicted opinion of an examining doctor
and specific and legitimate reasons for rejecting an opinion of

---

[9/] The Court notes that for claims filed on or after March 27, 2017, the
treating source rule does not apply.  See 20 C.F.R. § 416.920c.  Because
Robinson filed his claim before March 27, 2017, the Court will apply the
treating source factors consistent with the regulation.

an examining doctor that is contradicted by another doctor.
Lester, 81 F.3d at 830-31.

Dr. Harada is a consultative examining doctor brought
in by the SSA to examine Robinson.  AR 2467-73; see also SSR 13-
2p, 2013 WL 621536 at *12 (defining the role of a consultative
examiner in the context of co-occurring substance use and mental
disorders).  Dr. Harada conducted her examination of Robinson on
July 18, 2017.  AR 2467-73.  In the course of her exam and
report, she reviewed records of Robinson's mental-health and
substance-abuse history, including medical records and
information about his past treatment plans.  AR 2467.  She made
detailed findings about Robinson's symptoms and limitations,
including that Robinson's "ability to perform simple work
routines on a sustained basis under ordinary supervision might
be problematic due to [Robinson's] emotional dysregulation,
intense emotionality and impulsivity, and impaired functioning
when he experiences interpersonal disability."  AR 2473.  Dr.
Harada ultimately concluded that "[b]ased upon psychiatric
concerns alone, [Robinson] does not have the capacity to adapt
and cope with the usual demands of a low stress/entry level
position of employment despite current depression symptoms,

emotional dysregulation, distress intolerance, impulsivity and recurrent suicidal ideation." AR 2473.

While the ALJ seemed to accept Dr. Harada's findings about Robinson's symptoms and limitations, he ultimately assigned "little weight" to her findings in connection with the materiality analysis. AR 23-24. His rationale was that shortly after the report Robinson relapsed several times, which—in the ALJ's view—showed that Robinson's substance abuse had actually never ceased during the period of Dr. Harada's exam. Id. In other words, the ALJ found that Dr. Harada's findings were entitled to little weight because they did not account for the ongoing substance abuse.

The Court holds that the ALJ erred by failing to provide specific and legitimate reasons for assigning less weight to examining psychologist Dr. Harada's medical-opinion evidence.[10/] Specifically, the Court rejects the ALJ's purported explanation given that the record shows that Robinson's substance abuse—while waxing and waning in nature—was generally present to at least some degree throughout the relevant period. Even though Robinson relapsed soon after Dr. Harada's examination and report, she had access to prior medical records and treatment details about Robinson's substance abuse. See AR

---

[10/] At the telephonic hearing, counsel for both parties agreed that the "specific and legitimate" standard applies to the Court's review of the ALJ's decision to discount the relevant portion of Dr. Harada's medical opinion.

2468 (Dr. Harada acknowledging Robinson's history of substance abuse and dual-diagnosis treatment).  As Robinson points out in his Opening Brief, Dr. Harada also specialized in substance abuse and surely was conscious of Robinson's history when she made her findings.[11]  The Court finds that the ALJ did not explain with legitimate reasons why he "did not credit a significant and probative portion" of Dr. Harada's opinion in which she stated that Robinson's psychiatric impairments alone would be severely limiting.  Blacksher v. Berryhill, 762 F. App'x 372, 375-76 (9th Cir. 2019) (finding that ALJ erred when he failed to explain why he rejected a doctor's opinion that stated, "it is likely that [claimant's] mental illness would be severe, even in the absence of substance use"); see also Hiler

_____

[11]   Indeed, consultative examiners like Dr. Harada are used by the SSA in circumstances like these—where there are co-occurring substance use and mental disorders:

> [C]laimants who have a history of multiple emergency department visits for mental symptoms are often diagnosed with Substance-Induced Disorders.  Some receive a Substance Dependence or Substance Abuse diagnosis.  May of these individuals—especially those who do not have an ongoing treatment relationship with a medical source, as is frequently the case with homeless claimants—may have undiagnosed co-occurring mental disorders.  We may purchase CEs to help us determine whether such claimants have co-occurring mental disorder(s).  Whenever possible, we will try to purchase CEs from individuals who specialize in treating and examining people who have Substance Use Disorders or dual diagnoses of Substance Use Disorders and co-occurring mental disorders.

SSR 13-2p, 2013 WL 621536 at *12; see also Opening Br. at 21 (explaining that consultative examiners are often brought in by the SSA where a claimant is—like Robinson—"homeless, has had multiple emergency room visits, and an accurate picture of the mental impairments is needed").

v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (explaining that
an ALJ must address significant or probative evidence).  The
ALJ's speculation about the implications of the timeline of
Robinson's subsequent relapse episodes is not enough to meet the
substantial evidence standard.  See Blacksher, 762 F. App'x at
375-76.  The ALJ failed to account for evidence that Dr. Harada
was aware of Robinson's history of substance abuse and the
possibility of a relapse.  Because Dr. Harada's opinion goes to
the level of Robinson's "disability and capacity independent of
substance abuse, the ALJ did not properly address it, and that
opinion is not contradicted by substantial evidence in the
record."  Id.  Accordingly, the ALJ's treatment of Dr. Harada's
findings is error, and the Court cannot conclude that it was
harmless.  See id. (explaining how the ALJ's failure to provide
specific and legitimate reasons for discounting an examining
psychologist's opinion that the claimant's mental illness would
be severe even absent substance abuse was not harmless error).

     The ALJ also erred, as discussed above, in
substituting his own impressions and conclusions about the
context of Dr. Harada's examination and report.  The ALJ assumed
that Robinson's subsequent relapses indicated that he actually
was never sober during the period covered by Dr. Harada's
review.  But the evidence does not necessarily reflect this
conclusion, and it certainly does not support the conclusion

that Robinson's "impairments were solely the result of his substance abuse." Ambrosini, 727 F. Supp. 2d at 429. Regardless of whether or not Robinson was sober or using drugs during the time of Dr. Harada's review, the ALJ failed to grapple with the idea that Dr. Harada's findings still could have accounted for Robinson's mental disorders as separate from his substance use.  Indeed, "[t]here does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability."  SSR 13-2p at *4.

More generally, "[a]n ALJ cannot disregard a medical opinion based solely on his own amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility." Ambrosini, 727 F. Supp. 2d at 429 (quoting Morales, 225 F.3d at 317) (internal quotation marks omitted). An ALJ also may not make "speculative inferences from medical reports." Morales, 225 F.3d at 317.  As the Court emphasized earlier, "the principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving . . . mental disability."  Id.

For the above reasons, the Court holds that the ALJ erred in assigning little weight to Dr. Harada's opinions, and that the reasons he gave for discounting her opinions were not specific and legitimate.  On remand, the ALJ shall reconsider the weight assigned to Dr. Harada's opinions and provide

33

sufficient justification for that weighting.  The ALJ's weighing of Dr. Harada's opinion should also comply with the directives outlined in SSR 13-2p and account for Dr. Harada's expertise in treating substance use and dually-diagnosed patients.

## V.  Harmless Error and Remand

The errors at issue were not harmless.  "An error is harmless only if it is inconsequential to the ultimate non-disability determination . . . or if despite the legal error, the agency's path may reasonably be discerned." Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (internal quotation marks and citation omitted).  To consider an error harmless, the reviewing court must be able to "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015).  Moreover, an ALJ's decision will be set aside "if the proper legal standards were not applied in weighing the evidence and making the decision even though the findings are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (citing Benitez v. Califano, 573 F.2d 653, 655 (9th Cir. 1978)).

Had the ALJ properly analyzed the separate effects of Robinson's mental-health treatment for his co-occurring mental disorders and properly weighed the opinion of Dr. Harada, the ALJ may have found differently on the question of materiality.

34

That, in turn, may have led to a finding that Robinson would have been disabled even with the complete absence of substance abuse.  In light of these errors, and the fact that the evidence relied on by the ALJ does not substantially support his conclusions and inferences, this Court cannot confidently conclude that no reasonable ALJ would reach a different decision.  Accordingly, the ALJ's errors were not harmless.

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Only where the record is fully developed and "further administrative proceedings would serve no useful purpose," should a court remand for an immediate award of benefits.  Id. "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  But the Ninth Circuit has cautioned that "[a] remand for an immediate award of benefits is appropriate . . . only in rare circumstances."  Brown-Hunter, 806 F.3d at 495 (internal quotation marks omitted).

Here, the Court finds that remand is warranted to allow the ALJ to revisit the sequential DAA evaluation process and because the record may need to be further developed regarding whether Robinson's substance abuse was material to his

35

disability.  The Court therefore remands for further proceedings consistent with this Order.  Although the ALJ may still find Robinson's substance abuse is material to his disability on remand, the Court cannot conclude on this record that the errors in applying the materiality test, taken together, were harmless. On remand, the ALJ's materiality analysis and review of the evidence—which may include supplemental medical examinations and consultation with a medical expert—is governed by SSR 13-2p, which sets forth how a DAA analysis should be conducted in cases involving co-occurring mental disorders, and the regulations otherwise applicable under the five-step sequential disability evaluation.  In addition, Robinson should be afforded a reasonable opportunity to supplement the medical evidence to address the issues identified herein.  Robinson should remain cognizant that the ultimate burden of proving continued disability—including that his substance abuse was not material to his disability—rests with him.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the Commissioner's decision denying SSI and SSDI benefits and REMANDS to the ALJ for further administrative proceedings consistent with this Order.

36

The Clerk's Office shall enter judgment in Robinson's favor.  The party that prevails against the United States in a civil action is entitled to an award of attorney's fees, court costs, and other expenses.  28 U.S.C. § 2412.  Among other requirements, the prevailing party must submit to the court an application of fees and expenses "within thirty days of final judgment in the action."  Id. § 2412(d)(1)(B).

IT IS SO ORDERED.

DATED:  Honolulu, Hawai`i, March 23, 2021.



Alan C. Kay
Sr. United States District Judge

Robinson v. Saul, Civ. No. 20-00263 ACK-WRP, Order Reversing and Remanding the Decision of the Commissioner of Social Security.